NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JORGE BARRIOS, | |
| Petitioner, | No. 25cv15122 (EP) |
| v. | **OPINION** |
| PAMELA BONDI, *et al.*, | |
| Respondents. | |

**PADIN, District Judge.**

On August 29, 2025, Petitioner Jorge Barrios, a native and citizen of Guatemala, filed a Verified Habeas Corpus Petition under 28 U.S.C. § 2241, challenging his immigration detention at Delaney Hall Detention Center ("Delaney Hall") in Newark, New Jersey, after he was arrested by Immigration and Customs Enforcement ("ICE") during a check-in on August 1, 2025.  D.E. 1 ("Petition" or "Pet.") ¶¶ 1-2, 4, 18.  On September 25, 2025, Respondents filed a Letter Answer to Petitioner's Writ of Habeas Corpus, asserting the Petition was moot because Petitioner was removed from the United States on September 1, 2025.  D.E. 7 ("Answer").

Petitioner filed a Letter Reply to Respondent's Answer to Petitioner's Writ of Habeas Corpus, claiming extraordinary circumstances exist to avoid the mootness doctrine.  D.E. 10 ("Reply") at 2-3.  Petitioner seeks a court order to return him to the United States.  Reply at 1. Given the unresolved dispute and the challenges Petitioner raised in Reply, this Court provided Respondents leave to file a sur-reply, D.E. 12, which Respondents filed on November 4, 2025, D.E. 13 ("Sur-reply").

The Court has reviewed all pleadings, briefs, and supporting documents, and has determined that oral argument is unnecessary. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court will **DISMISS** *without prejudice* the Petition as **MOOT**.

## I.    BACKGROUND

Petitioner accepted voluntary departure from the United States after overstaying his Visa and after the Board of Immigration Appeals ("BIA") denied his asylum application in 2002. Answer at 1 (first citing Pet. ¶ 9; then citing D.E. 7-1 ("Joint Motion to Reopen Receipt") at 1). In 2013, United States Citizenship and Immigration Services ("USCIS") granted a Form I-130 Petition for Alien Relative on Petitioner's behalf, giving him the opportunity to apply for a green card. *Id.* In 2018, Petitioner and counsel for ICE signed a joint motion to reopen his removal proceedings, which would allow Petitioner to reopen his removal proceedings in order to vacate his final order of removal and also apply for a green card. *Id.* at 2 (first citing Joint Motion to Reopen Receipt; then citing Pet. ¶¶ 14-15). Although ICE joined the joint motion to reopen, it "reserved the right to challenge the merits of the application for adjustment of status (a green card) as the time of the hearing." Joint Motion to Reopen Receipt at 2. Petitioner filed the motion with the BIA on July 30, 2025. Pet. ¶ 1.

On August 1, 2025, Petitioner was arrested by ICE. Pet. ¶ 1. After he was taken into detention, Petitioner filed his Petition on August 29, 2025, alleging he was detained pursuant to a final removal order, and that his detention was unlawful because his joint motion to reopen was pending before the BIA. *Id.* ¶¶ 1, 14-17. This Court ordered Respondents to file an answer to the Petition and denied without prejudice Petitioner's Amended Motion for an Order to Show Cause. D.E. 4. The Court found that Petitioner was not entitled to immediate relief because he was subject to a final order of removal, and the BIA had not granted his joint motion to reopen. *Id.* at 2 n.3.

In their Answer, Respondents submitted that ICE lawfully removed Petitioner from the United States by plane on September 1, 2025.  Answer at 2 (citing D.E. 7-2, ("Warrant of Removal")).  They argue the Petition is moot because Petitioner is no longer detained.  *Id.* at 3. Furthermore, they contend that Petitioner can continue to litigate his immigration case from outside the United States and note that several courts have rejected challenges to removal while a motion to reopen is pending for this very reason.  Answer at 3-4; *see also id.* at 3-4 ("[T]o the extent that the petitioner seeks a stay of his removal until he exhausts his remedies with respect to his motion to reopen his immigration proceedings, that would be a direct challenge to his removal order and the court does not have jurisdiction over that aspect of the petitioner's filing under § 1252." quoting *M'Bagoyi v. Barr*, 423 F. Supp. 3d 99, 106 (M.D. Pa. 2019)).

In Reply, Petitioner argues that his Petition is not moot and asks the Court to order he be returned and released into the United States.  Reply at 1-2.  He claims that his removal was unlawful because ICE had stipulated to reopening immigration proceedings.  *Id.* at 2.  Although Petitioner had not been granted an emergency stay of removal, he contends that the joint motion to reopen filed before the BIA should have provided him the same protection "as if an automatic stay was in place." *Id.*  Petitioner further claims that although he was not technically subject to an "automatic stay" of removal, he was subject to the provisions of the Executive Office for Immigration Review ("EOIR"), which required the automatic termination of his removal order. Reply at 4 (citing 8 C.F.R. § 1003.18).   Specifically, Petitioner reads 8 C.F.R. § 1003.18(d)(1)(i)(G)—which concerns the mandatory termination provisions of the EOIR—to provide that immigration judges ("IJs") and the BIA are *required* to terminate proceedings upon the filing of a joint or expressly unopposed motion to terminate, "unless the immigration judge articulates unusual, clearly identified, and supported reasons for denying the motion."  Reply at 4.

3

Petitioner argues that this provision applies to him given he filed his joint motion to reopen before the BIA in July 2025. *Id.* at 4-5.

Petitioner submits that approximately three weeks after Respondents removed him from the United States, the BIA "issued a decision, mandatorily reopening and terminating both the Petitioner and his wife's removal proceedings as a matter of operation of law." *Id.* at 5. Petitioner argues that he has "an absolute or mandatory statutory right to vacate his removal order by operation of law[,]" and therefore, his removal is an abuse of executive power that warrants habeas relief. *Id.* Moreover, Petitioner urges the Court that these extreme circumstances warrant habeas review of the Petition after his removal. *Id.* at 5-6.

In their Sur-Reply, Respondents contend it is undisputed that Petitioner was subject to a final order of removal after he failed to voluntarily depart in 1998. Sur-reply at 1. Respondents also state that "[f]iling a motion [to reopen proceedings] with the [BIA] DOES NOT automatically stop the Department of Homeland Security from executing an order of removal or deportation," *id.* at 1-2 (quoting Joint Motion to Reopen at 1), and note that Petitioner was plainly made aware of this when he filed his motion, *see* Joint Motion to Reopen Receipt at 1.

Relatedly, Respondents note that Petitioner's claim that filing a motion to reopen with the BIA has the functional equivalent of staying removal proceedings has no support in caselaw or statute. *See id.* at 2 ("The BIA regulations governing motions to reopen say ICE 'shall proceed' with removal 'unless a stay of execution is specifically granted by the Board[.]'") (quoting 8 C.F.R. § 1003.2(f)). The Joint Motion to Reopen Receipt, dated July 30, 2025, further supports Respondents position: "If you are in DHS detention and are about to be deported, you may request the Board to stay your deportation on an emergency basis." Joint Motion to Reopen Receipt at 1. Respondents note that despite being represented by counsel, Petitioner did not request a stay of his

deportation on an emergency basis, nor has Petitioner explained the nearly multi-year gap between the signing of the joint motion to reopen in 2018 and the actual filing of the motion before the BIA in July 2025.  Sur-reply at 1.

In addition, Respondents maintain that Petitioner has not shown exceptional circumstances that justify review of his Petition after his removal because he can still pursue a green card from abroad through consular processing.  Sur-reply at 4 (citing *U.S. Citizenship and Immigration Services, Consular Processing*).[1]  Finally, Respondents assert the Court lacks authority to grant the relief requested by Petitioner—return to the United States—because doing so would invalidate a final order of removal, an action over which the Court lacks jurisdiction pursuant to 8 U.S.C. § 1252(g).  *Id.*

## II.  DISCUSSION

### A.    The Petition is Moot

The exercise of judicial power under Article III, § 2 of the United States Constitution requires the existence of a case or controversy.  *Chong v. Dist. Dir., I.N.S.*, 264 F.3d 378, 383 (3d Cir. 2001).  A case or controversy exists when a petitioner has suffered or has been threatened with "an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."  *DeFoy v. McCullough*, 393 F.3d 439, 442 (3d Cir. 2005) (citation modified).  A habeas petition challenging the legality and length of a petitioner's immigration detention generally becomes moot upon his removal and release from custody.  *Vasquez v. Aviles*, 639 F. App'x 898, 902 (3d Cir. 2016).

---

[1]  *U.S. Citizenship and Immigration Services, Consular Processing* is available at https://www.uscis.gov/green-card/green-card-processes-and-procedures/consular-processing (last visited November 7, 2025).

Petitioner challenges his post-removal order detention in his Petition because he expected that his removal proceedings would be reopened based on the joint motion to reopen that he filed before the BIA. *See* Pet. As noted above, Petitioner was removed from the United States on September 1, 2025, before his removal proceedings and joint motion to reopen was terminated by the BIA on September 25, 2025. Reply at 5; *see Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020) ("[T]he discretion to decide whether to execute a removal order includes the discretion to decide when to do it."). Therefore, the case or controversy concerning Petitioner's detention that existed when Petitioner filed his Petition no longer exists, and accordingly, the Court concludes it is moot.

### B.    No Exception to the Mootness Doctrine Applies

However, finding the Petition moot is not the end of the matter as there are exceptions to the mootness doctrine, including:

> (1) secondary or "collateral" injuries that survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit.

*Chong*, 264 F.3d at 384. The Court must therefore next consider whether any of those exceptions applies to the Petition.

Petitioner argues that two Ninth Circuit cases support a finding that exceptional circumstances are present that require the Court to find an exception to the mootness doctrine applies. The Court disagrees because neither case cited by Petitioner provides an exception to the mootness doctrine that is relevant to the Petition.

In *Singh v. Waters*, the habeas relief the petitioner requested was that "the district court [] order the INS to return [petitioner] to the United States and preclude the INS from violating the immigration judge's stay of deportation." 87 F.3d 346, 348 (9th Cir. 1996). In that case, the

district court held that it lacked jurisdiction to address the habeas petition because the petitioner's removal was lawful.  *Id.* at 348-39.  The Ninth Circuit disagreed with the district court and remanded the case so that the district court could order "the INS not to violate the stay of deportation issued on December 2, 1993 and to permit [the petitioner] to return to the United States for the purpose of appearing at a hearing before the immigration judge to determine whether discretion to adjust his status should be favorably exercised."  *Id.* at 350.  But unlike in *Singh*, Petitioner did not obtain a stay of removal, and his removal on September 1, 2025 was not unlawful.

Petitioner also relies on *Rivera v. Ashcroft*, where the Ninth Circuit held that "[b]ecause [the petitioner] has a colorable citizenship claim, [he] has a constitutional right to judicial review, and may obtain such review via habeas corpus even after accepting deportation and waiving his right to appeal the IJ's decision.  394 F.3d 1129, 1137 (9th Cir. 2005).  But *Rivera* was superseded by the Real ID Act.  *See Iasu v. Smith*, 511 F.3d 881, 886 (9th Cir. 2007) (stating the Real ID Act of 2005 amended 8 U.S.C. §1252(a)(5) "by eliminating all district court habeas jurisdiction over orders of removal" and providing a substitute review through the courts of appeals)).  As noted above, this Court's habeas jurisdiction was premised on Petitioner's challenge to the lawfulness of his custody, not a challenge to his removal order.  *See Lindaastuty v. Att'y Gen. of U.S.*, 186 F. App'x 294, 298 (3d Cir. 2006) ("[B]ecause [petitioner] has already been deported and is, therefore, no longer in custody, the challenge to her detention is moot and the habeas petition must be dismissed.").

Of the four aforementioned exceptions, the only one that is relevant is the collateral consequences doctrine.  The collateral consequences doctrine is implicated when "collateral injuries [] survive after resolution of the primary injury."  *Chong*, 264 F.3d at 384.  In *Chong*, the

habeas petitioner challenged the BIA's determination that she was ineligible for withholding of removal. *Id.* at 382. While the petitioner's habeas petition was pending, she was deported to Malaysia. *Id.* The Third Circuit found that sufficient collateral consequences flowed from the BIA's order of removal, even though the petitioner had already been removed because she was statutorily ineligible to reenter the United States for ten years after her deportation. *Id.* at 384-86.

Here, the primary injury giving rise to a case or controversy was Petitioner's detention, not the validity of his order of removal. Thus, the issue of Petitioner's detention became moot upon his removal from the United States and release in Guatemala. The collateral injury asserted is Petitioner's statutory right to seek adjustment of his status and reenter the United States. This injury, however, is not collateral to the lawfulness of Petitioner's detention. Moreover, unlike the petitioner in *Chong*, Petitioner may now apply for a green card from Guatemala through consular processing.

Having found the Petition is moot, and that there are no collateral consequences that create a live case or controversy, the Court will **DISMISS** the Petition as **MOOT**.

## III.    CONCLUSION

For the reasons discussed above, the Court will **DISMISS** the Petition **without prejudice** as moot. An appropriate order accompanies this opinion.


Dated: November 10, 2025



_____
Evelyn Padin, U.S.D.J.